Nos. 23-11528, 23-11642, 23-11644

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**STATE OF FLORIDA,**

Plaintiff-Appellee
Cross Appellant,

v.

**UNITED STATES OF AMERICA, et al.,**

Defendants-Appellants
Cross Appellees.

On Appeal from the United States District Court
for the Northern District of Florida
Nos. 3:21-cv-01066-TKW-ZCB, 3:23-cv-09962-TKW-ZCB

**BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF PLAINTIFF-APPELLEE AND OPPOSITION TO STAY**

MATT A. CRAPO
CHRISTOPHER J. HAJEC
**Immigration Reform Law Institute**
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590
Email: litigation@irli.org

Attorneys for *Amicus Curiae*

**SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS**

Pursuant to 11th Cir. R. 26.1-2 and Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) In addition to those persons listed in Defendants-Appellants' Statement of Interested Persons, the following persons and entities have an interest in this case:

- Crapo, Matt A., attorney for *amicus curiae* Immigration Reform Law Institute

- Hajec, Christopher J., attorney for *amicus curiae* Immigration Reform Law Institute

- Immigration Reform Law Institute, *amicus curiae*

Dated: May 24, 2023

                                            Respectfully submitted,

                                            /s/ Matt Crapo
                                            MATT A. CRAPO
                                            Counsel for *Amicus Curiae*

## STATEMENT OF *AMICUS CURIAE*

All parties have consented to the filing of this *amicus curiae* brief. No party or party's counsel authored any part of this brief. No person or entity, other than *amicus*, its members, or its counsel, has made a monetary contribution to this brief's preparation or submission.

                                                  Respectfully submitted,

                                                  /s/ Matt Crapo
                                                  MATT A. CRAPO
                                                  Counsel for *Amicus Curiae*

# **TABLE OF CONTENTS**

**Page**

SUPPLEMENTAL STATEMENT OF INTERESTED PARTIES

STATEMENT OF *AMICUS CURIAE*

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF *AMICUS CURIAE* ..........................................................................1

SUMMARY OF THE ARGUMENT ........................................................................1

ARGUMENT .............................................................................................................3

I.   Because paroling any individual alien under the challenged policies does not address an urgent humanitarian concern and produces no significant public benefit, Defendants' parole programs violate 8 U.S.C. § 1182(d)(5)(A) ........3

II.  Legislative history confirms that Congress intended the parole authority to be exercised only on an individual basis .......................................................5

III. Contemporaneously-enacted agency rules comported with a narrow, individualized approach to parole, particularly with respect to aliens amenable to expedited removal, and other, current regulations still take that approach ........................................................................................................7

CONCLUSION ........................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Matter of Silva-Trevino*,
  26 I&N Dec. 826 (BIA 2016) ................................................................................2

*Texas v. Biden (MPP)*,
  20 F.4th 925 (5th Cir. 2021) ................................................................................3

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ........................................................................................2

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
  50 F.4th 164 (D.C. Cir. 2022) .............................................................................1

## STATUTES

8 U.S.C. § 1182(d)(5)(A) ................................................................... 3, *passim*

8 U.S.C. § 1182(d)(5)(B) ................................................................................. 3

8 U.S.C. § 1225(b) ........................................................................................... 2

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ................................................................... 7

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
  § 602(a), Pub. L. No. 104-208, 110 Stat. 3009 .................................................3

Refugee Act of 1980,
  § 203(f), Pub. L. No. 96-212, 94 Stat. 102 .......................................................3

## REGULATIONS

8 C.F.R. § 212.5(a) (1998) ........................................................................... 8, 9

8 C.F.R. § 212.5(b) (2023) ........................................................................... 8, 9

8 C.F.R. § 212.5(c) (2023) ............................................................................................. 9

8 C.F.R. § 212.19(d) ................................................................................................... 10

8 C.F.R. § 235.3(b) ....................................................................................................... 9

8 C.F.R. § 235.3(b)(2)(iii) ......................................................................................... 8, 9

8 C.F.R. § 235.3(b)(4) ............................................................................................... 7, 8

8 C.F.R. § 235.3(b)(4)(ii) .......................................................................................... 8, 9

8 C.F.R. § 235.3(b)(5)(i) ............................................................................................... 8

8 C.F.R. § 235.3(c) .................................................................................................... 8, 9

## **MISCELLANEOUS**

H.R. Rep. No. 104-469, pt. 1 (1996) ............................................................................. 6

Implementation of Changes to the Parole Process for Venezuelans,
   88 Fed. Reg. 1279 (Jan. 9, 2023) ............................................................................. 5

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens;
   Conduct of Removal Proceedings; Asylum Procedures,
   62 Fed. Reg. 10312 (Mar. 6, 1997) .................................................................. 7, 8, 9

International Entrepreneur Rule,
   82 Fed. Reg. 5238 (Jan. 17, 2017) ......................................................................... 10

Procedures for Credible Fear Screening and Consideration of Asylum,
   Withholding of Removal, and CAT Protection Claims by Asylum Officers,
   87 Fed. Reg. 18078 (Mar. 29, 2022) ....................................................................... 8

S. Rep. No. 104-249 (1996) .......................................................................................... 6

## INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases in the interests of United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including: *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022), *petition for cert. filed*, No. 22-1071 (S. Ct. May 1, 2023); *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); and *Matter of Silva-Trevino*, 26 I&N Dec. 826 (BIA 2016).

## SUMMARY OF THE ARGUMENT

This Court should deny Defendants-Appellants' request for a stay of the district court's orders vacating the Parole+ATD policy and enjoining the Parole with Conditions ("PWC") policy. The text of the governing statute requires that parole be given "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." Defendants claim that paroling numerous low-priority aliens under the challenged policies meets this standard because it would purportedly help "maintain[] safe conditions in USBP facilities during high-encounter periods." Stay Motion at 9; *see also id.* at 21 ("Parole+ATD, like PWC, was promulgated to address unusual and exigent overcrowding."). Even if the parole policies tend to alleviate overcrowding, the parole of any specific alien does

1

not serve that purpose significantly. At best, the parole of any particular alien, *in addition* to the parole of numerous other similarly situated "low-priority" aliens would be necessary to attain the alleged public benefit. Paroling any particular alien does not significantly increase the public benefit absent granting *en masse* parole to all the other low-priority aliens threatening to overcrowd border patrol facilities, and thus itself provides no significant public benefit. In short, Defendants are not paroling any particular alien on the basis that doing so will significantly benefit the public or meaningfully address an urgent humanitarian concern.

Defendants' justification for their parole program also runs counter to the text and structure of the statute, the legislative history, contemporary interpretations by the agency charged with enforcing the provision, and other regulations interpreting the statute. Since the parole statute was amended in 1996, the regulations have contemplated that parole of aliens subject to mandatory detention under 8 U.S.C. § 1225(b) is only available in cases of medical emergencies or for law enforcement purposes (such as parole for prosecution or to testify). The test for parole has been whether there are unique circumstances or qualities attributable to a specific alien whose presence in the United States would meaningfully address an urgent humanitarian concern or significantly benefit the public. For instance, the rule governing parole for entrepreneurs properly construes the parole statute as requiring a showing that a particular alien's presence in the

2

United States provides a significant public benefit. Because Defendants' parole program does not comport with the statutory requirements for parole, Defendants-Appellants are unlikely to succeed on the merits, and this Court should therefore deny their motion for a stay.

## ARGUMENT

I. **Because paroling any individual alien under the challenged policies does not address an urgent humanitarian concern and produces no significant public benefit, Defendants' parole programs violate 8 U.S.C. § 1182(d)(5)(A).**

The current language in 8 U.S.C. § 1182(d)(5)(A), which authorizes parole "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit," was added by section 602(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")[1] "'to limit the scope of the parole power and prevent the executive branch from using it as a programmatic policy tool.'" A131 (quoting *Texas v. Biden (MPP)*, 20 F.4th 925, 947 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022)). The statute's "only on a case-by-case basis" language calls for an individualized determination that the

---

[1] Title VI of division C of Pub. L. No. 104-208, 110 Stat. 3009, 3009-689; *see also* § 203(f) of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, 107-08 (codified at 8 U.S.C. § 1182(d)(5)(B)) (providing that DHS "may not parole into the United States an alien who is a refugee unless [DHS] determines that compelling reasons in the public interest *with respect to that particular alien* require that the alien be paroled into the United States rather than be admitted as a refugee") (emphasis added).

3

parole of "any [individual] alien applying for admission to the United States" serves an "urgent humanitarian" purpose or that the presence of *that alien* would provide a "significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

This individualized understanding of the parole authority is buttressed by the text that follows, which directs that "*the* alien" temporarily paroled "shall forthwith return or be returned to the custody from which *he* was paroled and thereafter *his* case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States" "when the purposes of such parole shall … have been served[.]" *Id.* (emphasis added). This statutory language makes it abundantly clear that any applicant for parole must show that his or her own presence in the United States satisfies either the "urgent humanitarian" reason or "significant public benefit" standard for parole.

In contrast to an individualized test for parole, Defendants attempt to justify the Parole+ATD and PWC programs by suggesting that *en masse* parole of "low-priority" aliens would help "maintain[] safe conditions in USBP facilities during high-encounter periods." Stay Motion at 9; *see also id.* at 21 ("Parole+ATD, like PWC, was promulgated to address unusual and exigent overcrowding."). But the purported benefits of the parole programs can only be attained if a sufficient

4

number of aliens are paroled *en masse* to relieve overcrowding.[2] Because the public benefit of paroling any particular alien depends on the aggregate effect of paroling many similarly-situated aliens *en masse*, the public benefit of paroling an individual alien is insignificant; if that alien were not paroled, the public benefit allegedly produced by paroling numerous other aliens would not be appreciably lessened. In other words, there is no significant public benefit in paroling any particular alien; at best, the alleged significant benefit only comes from paroling that alien *in addition to* other aliens *en masse*. And the *significant* public benefit only comes from the *en masse* parole, not from the parole of any individual alien. In short, Defendants are not paroling any individual alien on the basis that doing so will significantly benefit the public.

## II. Legislative history confirms that Congress intended the parole authority to be exercised only on an individual basis.

The legislative history leading up to the enactment of IIRIRA reflects Congress's disapproval of the Executive Branch's overuse of the parole authority. For example, the House Judiciary Committee Report complained of "recent abuse

---

[2] Indeed, in another context relating to another mass parole program, the government has found the parole of tens of thousands of purportedly low-priority aliens was insufficient to stem the tide at the border. *See*, *e.g.*, Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1279, 1280 (Jan. 9, 2023) (finding a parole limit of 24,000 was insufficient to provide an adequate alternative to crossing the border illegally and replacing that limit with a *monthly* limit of 30,000 travel authorizations spread across four countries so that the program may "serve[] as a meaningful alternative to irregular migration.").

of the parole authority" by the Clinton administration "to admit up to 20,000 Cuban nationals *annually*." H.R. Rep. No. 104-469, pt. 1 at 140 (1996) (emphasis added). Here, the district court found that the Parole+ATD program was used to parole tens of thousands of aliens. *See* AR74-75 (finding that 39,918 aliens were released under Parole+ATD in April 2022 and almost 89,000 aliens in November 2022). Thus, the parole programs challenged here are more than an order of magnitude bigger than the parole abuse complained of by the House Judiciary Committee in 1996.

Further, the House Judiciary Committee report included examples of what sorts of situations would warrant humanitarian or public interest parole:

> Parole should only be given on a case-by-case basis for specified urgent humanitarian reasons, *such as life-threatening humanitarian medical emergencies*, or for specified public interest reasons, *such as assisting the government in a law-enforcement-related activity*. It should not be used to circumvent Congressionally-established immigration policy or to admit aliens who do not qualify for admission under established legal immigration categories.

H.R. Rep. No. 104-469, pt. 1 at 141 (emphasis added). The Senate Judiciary Committee Report similarly stated that its parole reform provision was intended to "reduce[] the abuse of parole" and "[t]ighten[] the Attorney General's parole authority," and that "[t]he committee bill is needed to address ... the abuse of humanitarian provisions such as asylum and parole." S. Rep. No. 104-249 at 2 (1996).

In sum, the legislative history supports reading 8 U.S.C. § 1182(d)(5)(A) as requiring an individual and particularized showing of an "urgent humanitarian" need or a "significant public benefit" resulting from the parole of any particular alien. Nothing in the legislative history indicates that Congress intended to authorize the very *en masse* parole "abuse" it decried.

**III. Contemporaneously-enacted agency rules comported with a narrow, individualized approach to parole, particularly with respect to aliens amenable to expedited removal, and other, current regulations still take that approach.**

Within six months of the passage of IIRIRA, the Department of Justice, which preceded the Department of Homeland Security ("DHS") as the agency charged with enforcement of the Immigration and Nationality Act, amended the regulations governing parole to comport with the newly enacted law. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312 (Mar. 6, 1997). In that rulemaking, the agency restricted parole for aliens who (like those covered by Defendants' parole programs) are subject to expedited removal:

> because section 235(b)(1)(B)(iii)(IV) of the Act [8 U.S.C. § 1225(b)(1)(B)(iii)(IV)] requires that an alien in expedited removal proceedings "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," the Department feels that parole is appropriate only in the very limited circumstances specified in § 235.3(b)(4).

7

62 Fed. Reg. at 10320. As first promulgated in 1997, 8 C.F.R. § 235.3(b)(4), in turn, permitted parole of aliens awaiting a credible fear interview only where "parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective." 62 Fed. Reg. at 10356 (setting forth 8 C.F.R. § 235.3(b)(4)(ii)).[3]

These medical emergency and law enforcement objective restrictions on parole remained in place for aliens subject to expedited removal (and who had not established a credible fear of persecution,[4] like the aliens covered by Defendants' parole programs) until March 29, 2022, when DHS issued an interim final rule removing the "medical emergency" or "legitimate law enforcement objective" language and replacing it with the following: "Parole of such alien shall only be considered in accordance with [8 U.S.C. § 1182(d)(5)] and § 212.5(b) of this chapter." Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers, 87 Fed.

---

[3] The same restrictions on parole applied to aliens subject to expedited removal who did not make a claim of asylum. *See id.* at § 235.3(b)(2)(iii), (5)(i).

[4] The agency explained that only those "aliens found to have a credible fear will be subject to the generally applicable detention and parole standards contained in the Act," *i.e.*, those standards set forth in 8 C.F.R. § 212.5(a) (1998). 62 Fed. Reg. at 10320. "[P]arole authority is specifically limited while a credible fear determination is pending under § 235.3(b)(4), [but] those found to have a credible fear and referred for a hearing under section 240 of the Act will be subject to the rule generally applicable to arriving aliens in § 235.3(c)." 62 Fed. Reg. at 10320.

Reg. 18078, 18220 (Mar. 29, 2022) (revising 8 C.F.R. § 235.3(b)(2)(iii), (b)(4)(ii), and (c)).

Even now, under the more general parole regulations applicable to detained arriving aliens, the regulations still depend on circumstances particular to a specific alien. For example, under the regulation promulgated soon after the enactment of IIRIRA, parole is generally deemed appropriate only for: (1) aliens who have a serious medical condition; (2) women who are pregnant; (3) juvenile aliens; (4) witnesses in judicial, administrative, or legislative proceedings; and (5) aliens whose continued detention is not in the public interest. *See* 62 Fed. Reg. at 10348 (8 C.F.R. § 212.5(a)). Similar restrictions remain for aliens subject to mandatory detention under current 8 C.F.R. § 235.3(b) or (c). *See* 8 C.F.R. § 212.5(b) (2023). Although these restrictions on parole authority do not directly apply to all other arriving aliens, *see* 62 Fed. Reg. at 10348 (§ 212.5(b)), the regulations still require that parole be granted "in accordance with" 8 U.S.C. § 1182(d)(5)(A), and include some circumstances in which denial of parole is mandatory. *See id.*; *see also* 8 C.F.R. § 212.5(c) (2023).

Other regulations reflect DHS's understanding that parole is only justified where a particular alien's *presence in the United States* provides a significant public benefit. For example, when DHS promulgated the International Entrepreneur Rule in 2017, it explained that its adjudicators would be required to

9

determine, *inter alia*, "whether the specific applicant's parole would provide a significant public benefit[.]" 82 Fed. Reg. 5238, 5239 (Jan. 17, 2017); *see also id.* at 5250 (providing that DHS will evaluate "whether granting parole to a particular individual would provide a significant public benefit"); *id.* at 5260 ("Imposing a limit on the number of entrepreneurs who may be granted parole based on the same start-up entity is thus consistent with ensuring that *each* entrepreneur's parole will provide a significant public benefit.") (emphasis added). Indeed, the regulation governing parole for entrepreneurs requires DHS to find "that an applicant's presence in the United States will provide a significant public benefit[.]" 8 C.F.R. § 212.19(d).

In sum, the agency's contemporaneous interpretation of 8 U.S.C. § 1182(d)(5)(A) required an individual and particularized showing of an "urgent humanitarian" need or a "significant public benefit" resulting from the parole of any specific alien. Nothing in the contemporaneous interpretations suggested that an insignificant or marginal public benefit aggregated with the purported benefit of *en masse* parole would be sufficient to meet the statutory standard for parole under § 1182(d)(5)(A). Other, current regulations reaffirm that there must be something particular about the specific alien's presence in the United States that would provide a significant public benefit in order to satisfy the standard under the parole statute. DHS's Parole+ATD and PWC programs, which weigh the purported public

10

benefit in the aggregate and do not depend on any particular humanitarian concern or public benefit attributable to a specific alien's presence, stand in stark contrast with these prior and current regulatory interpretations of the requirements of 8 U.S.C. § 1182(d)(5)(A).

## CONCLUSION

For the foregoing reasons, Defendants-Appellants' motion to stay the district court's orders pending appeal should be denied.

DATED: May 24, 2023					Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the word limitation of Fed. Fed. R. App. P. 29(a)(5) because:

This brief contains 2,491 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

DATED: May 24, 2023               Respectfully submitted,

                                  /s/ Matt Crapo
                                  Matt A. Crapo
                                  Counsel for *Amicus Curiae*

# CERTIFICATE OF SERVICE

I certify that on May 24, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo
Matt A. Crapo
Counsel for *Amicus Curiae*