Nos. 23-11528, 23-11644

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF FLORIDA,

*Plaintiff-Appellee*,

v.

UNITED STATES OF AMERICA, *et al.*

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Florida

**BRIEF OF THE COMMONWEALTH OF VIRGINIA AND 22 OTHER
STATES AS *AMICI CURIAE* IN SUPPORT OF APPELLEE**

JASON S. MIYARES
*Attorney General*

ANDREW N. FERGUSON
*Solicitor General*

KEVIN M. GALLAGHER
*Deputy Solicitor General*

M. JORDAN MINOT
*Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

May 24, 2023

*Counsel for* Amici Curiae

*Florida v. United States*, Nos. 23-11528, 23-11644

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1(a)(1) and 26.1-2(b), the undersigned counsel certifies that the following listed persons may have an interest in the outcome of this case:

1.     Alabama, State of

2.     Alaska, State of

3.     Arkansas, State of

4.     Bailey, Andrew

5.     Bird, Brenna

6.     Boynton, Brian M.

7.     Cameron, Daniel

8.     Carr, Christopher M.

9.     Christmas, Natalie

10.    Darrow, Joseph A.

11.    DeSantis, Ronald

12.    Drummond, Gentner F.

13.    Ferguson, Andrew N.

14.    Fitch, Lynn

*Florida v. United States*, Nos. 23-11528, 23-11644

15.    Gallagher, Kevin M.

16.    Georgia, State of

17.    Griffin, Tim

18.    Guard, John M.

19.    Hart, Joseph E.

20.    Hilgers, Michael T.

21.    Hill, Bridget

22.    Hudak, Matthew

23.    Idaho, State of

24.    Indiana, State of

25.    Iowa, State of

26.    Jackley, Marty J.

27.    Kansas, State of

28.    Kentucky, Commonwealth of

29.    Knudsen, Austin

30.    Kobach, Kris

31.    Labrador, Raúl

32.    Landry, Jeff

33.    Louisiana, State of

*Florida v. United States*, Nos. 23-11528, 23-11644

34.  Marshall, Steve

35.  Mayorkas, Alejandro

36.  Minot, M. Jordan

37.  Mississippi, State of

38.  Missouri, State of

39.  Miyares, Jason S.

40.  Montana, State of

41.  Moody, Ashley

42.  Morrisey, Patrick

43.  Nebraska, State of

44.  North Dakota, State of

45.  Ohio, State of

46.  Oklahoma, State of

47.  Ortiz, Raul

48.  Patel, Anita J.

49.  Peachey, William C.

50.  Percival, James H.

51.  Reuveni, Erez

52.  Reyes, Sean D.

*Florida v. United States*, Nos. 23-11528, 23-11644

53.  Rokita, Theodore E.

54.  Ryan, Erin T.

55.  South Carolina, State of

56.  South Dakota, State of

57.  Taylor, Treg

58.  Utah, State of

59.  Virginia, Commonwealth of

60.  Ward, Brian C.

61.  West Virginia, State of

62.  Wetherell, T. Kent

63.  Whitaker, Henry C.

64.  Wilson, Alan

65.  Wilson, Sarah S.

66.  Wrigley, Drew

67.  Wyoming, State of

68.  Yost, Dave

To the best of *Amici*'s knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

*Florida v. United States*, Nos. 23-11528, 23-11644

Respectfully submitted this 24th day of May 2023.

*/s/ Andrew N. Ferguson*
_____

Andrew N. Ferguson

*Counsel for* Amici Curiae

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................ii

INTERESTS OF *AMICI CURIAE* ...........................................................1

STATEMENT OF THE ISSUE ..................................................................2

BACKGROUND ........................................................................................2

SUMMARY OF ARGUMENT ...................................................................5

ARGUMENT ..............................................................................................6

    I.    The Administration has pursued an illegal policy that usurps Congress's constitutional authority .............................6

    II.   The remaining equitable factors cut decisively against the Administration.................................................................10

CONCLUSION ..........................................................................................14

COUNSEL FOR ADDITIONAL AMICI STATES .................................16

CERTIFICATE OF COMPLIANCE.........................................................18

CERTIFICATE OF SERVICE.................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. United States*,
  567 U.S. 387 (2012) ............................................................... 7, 11

*Democratic Exec. Comm. of Fla. v. Lee*,
  915 F.3d 1312 (11th Cir. 2019) ................................................ 5

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ................................................................. 8

*Galvan v. Press*,
  347 U.S. 522 (1954) ................................................................. 7

*Jennings v. Rodriguez*,
  138 S. Ct. 830 (2018) ........................................................... 7, 8

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ................................................................. 7

*Louisiana v. Centers for Disease Control & Prevention*,
  603 F. Supp. 3d 406 (W.D. La. 2022) ...................................... 11

*Texas v. United States*,
  40 F.4th 205 (5th Cir. 2022) .................................................. 11

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) ............................................................. 9

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952) ................................................................. 8

## Statutes

8 U.S.C. §1182 .............................................................. 7, 8, 9

8 U.S.C. §1225 .............................................................. 2, 8, 9

## Other Authorities

7News Staff, *'Humanitarian Crisis': Bowser Calls for National Guard to Help with Migrants Bused to DC*, ABC News (July 28, 2022), https://tinyurl.com/mspnwjz8 ........................ 12

*Circumvention of Lawful Pathways*, 88 Fed. Reg. 11704-01, 11705 (Feb. 23, 2023) ............................................................. 4

Evelyn Holmes & Eric Horng, *Mayor Lightfoot issues emergency declaration in response to surge of Chicago migrants*, ABC7 News (May 9, 2023), https://tinyurl.com/bdfmxmn8 ........................................................ 12

Federation for American Immigration Reform, *The Fiscal Burden of Illegal Immigration on United States Taxpayers 2023* (last accessed May 23, 2023), https://tinyurl.com/ynrpjzrm ........................................................ 12

Jeffery C. Mays, *Mayor Adams Walks a Tightrope in Lashing Out at Migrant Influx*, The New York Times (May 2, 2023) ...................................................................... 12

*Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists*, 86 Fed. Reg. 42828-02, 42830 (Aug. 5. 2021) ........................................... 4

Selene Rodriguez, *How Porous Borders Fuel Human Trafficking in the United States*, Texas Policy Institute (Jan. 11, 2022), https://tinyurl.com/msbv5czr .................................... 14

U.S. Drug Enforcement Administration, *Fentanyl Deaths Climbing, DEA Washington Continues the Fight* (Feb. 16, 2022), https://tinyurl.com/2vz7rwn6 ................................... 13

U.S. Immigration and Customs Enforcement, *ICE Annual Report Fiscal Year 2020*, 4-5 (Dec. 23, 2020), https://tinyurl.com/2b7k4yxw ........................................................ 13

## INTERESTS OF *AMICI CURIAE* [1]

*Amici curiae* are the Commonwealth of Virginia, the State of Alabama, the State of Alaska, the State of Arkansas, the State of Georgia, the State of Idaho, the State of Indiana, the State of Iowa, the State of Kansas, the Commonwealth of Kentucky, the State of Louisiana, the State of Mississippi, the State of Missouri, the State of Montana, the State of Nebraska, the State of North Dakota, the State of Ohio, the State of Oklahoma, the State of South Carolina, the State of South Dakota, the State of Utah, the State of West Virginia, and the State of Wyoming (collectively, the *Amici* States).

*Amici* States have a compelling interest in this case. The Administration's *en masse* parole of aliens violates federal immigration law and abdicates its responsibility to secure the nation's borders. The Administration claims that its latest policy is necessary to address the

---

[1] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2). All parties have consented to the filing of this brief. No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and no person—other than *Amici* States or their counsel— contributed money that was intended to fund preparing or submitting this brief.

emergency on the border. But the emergency is of its own making, and its unlawful policy merely compounds the emergency.

The challenged policy also exacerbates the ongoing uncontrolled influx of aliens into *Amici* States. Providing for the more than one million illegal immigrants released into the interior by the Administration is causing immense strain to the States' public infrastructures, hampering their ability to provide vital services to their citizens, and throwing their labor markets into chaos. *Amici* States submit this brief to illuminate the serious equitable concerns that weigh against granting the Secretary's motion.

## STATEMENT OF THE ISSUE

Whether this Court should grant Appellants' motion to stay the district court's order pending appeal.

## BACKGROUND

The Administration has willfully violated Congress's directive that aliens arriving at the border "shall be detained" while their applications for admission are processed. 8 U.S.C. §1225(b). "[I]nstead of detaining them until their immigration proceedings are concluded as required by 8 U.S.C. §1225(b)," the Department of Homeland Security (DHS)

implemented "a series of policies … to expedite the release of aliens arriving at the Southwest Border into the country." A158. The Administration has released more than one million aliens into the nation's interior since 2021. A082.

The "unprecedented 'surge' of aliens that started arriving at the Southwest Border almost immediately after President Biden took office and that has continued unabated over the past two years was a predictable consequence of these actions." A058-59. Because "migrant populations believe[d] they will be released into the country," illegal immigration surged, increasing more than tenfold in the first six months of the Administration. *Ibid.*

In March 2021, the Administration implemented "immigration enforcement by the honor system," releasing aliens at the border with "nothing more than a 'piece of paper that said "go find somebody at ICE."'" A064. The Administration then "doubled down on that approach" by adopting the "indistinguishable" Parole + Alternatives to Detention Policy (Parole+ATD) in November 2021. A065-68. Despite Parole+ATD being purportedly necessary due to the COVID-19 pandemic, the

Administration did not eliminate it in 2022 when the public health emergency waned. A070.

The Administration has known for a long time that a surge of migrants would follow the expiration of the Centers for Disease Control and Prevention's Title 42 public health order. The President originally announced in January 2023 that he would terminate the COVID-19 public health emergency, A659, which would in turn terminate the Title 42 order. See *Public Health Reassessment and Order Suspending the Right To Introduce Certain Persons From Countries Where a Quarantinable Communicable Disease Exists*, 86 Fed. Reg. 42828-02, 42830 (Aug. 5. 2021). A few weeks later, DHS proposed Parole+ATD, the express purpose of which was to address the looming surge of migrants that would follow the expiration of the Title 42 order. See *Circumvention of Lawful Pathways*, 88 Fed. Reg. 11704-01, 11705 (Feb. 23, 2023). Yet, when the district court enjoined Parole+ATD on March 8, the Administration neither sought a stay nor designed a new policy. It did not even file a notice of appeal until a day before the filing deadline and only five days before the Title 42 order expired. A158.

Instead, it waited until hours before the Title 42 order expired, reimposed a policy functionally identical to the one the district court had enjoined, and gave it a new name: Parole with Conditions (PWC). The district court correctly preliminarily enjoined this lawless policy. This Court should deny the Administration's request for a stay.

## SUMMARY OF ARGUMENT

This Court should deny the Administration's request for a stay. "In considering a motion for stay, [this Court] account[s] for the following factors ... (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019).

The Secretary fails this test. First, as the district court correctly held, the policies contravene Congress's statutory directives. The Secretary is therefore unlikely to succeed on the merits. Second, with respect to the remaining equitable factors, the balance tips strongly against the Secretary. The Administration's hands are far from clean. It

is responsible for the crisis at the border that it claims PWC is necessary to address, and the history of PWC reeks of bad faith. Moreover, the Administration's abdication of its responsibilities to detain aliens and enforce immigration law irreparably harms *Amici* States. The *en masse* parole of aliens imposes huge, unrecoverable costs on *Amici* States, including surging expenses for education, law enforcement, and emergency medical care. It also threatens to overwhelm their public infrastructure and degrade their ability to provide critical services to their own citizens. Further, the Administration's failure to secure the border has greatly exacerbated the severe problems of transnational crime, including the smuggling of Chinese-manufactured fentanyl that is killing more than 100,000 Americans per year, as well as human trafficking and the exploitation of minors.

## ARGUMENT

## I.    The Administration has pursued an illegal policy that usurps Congress's constitutional authority

"Defendants have effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding into the country," by "releasing more than a million aliens into

the country" on "parole" and "without even initiating removal proceedings." A045-46. These policies are unlawful.

That the formulation of immigration policies "is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government." *Galvan v. Press*, 347 U.S. 522, 531 (1954); see also *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). Congress's plenary immigration power includes the power to "specif[y] which aliens may be removed from the United States and the procedures for doing so." *Arizona v. United States*, 567 U.S. 387, 396 (2012). Relevant here, Congress has "unequivocally mandate[d] that aliens" arriving at the border "'shall' be detained," subject to limited exceptions. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) (quoting 8 U.S.C. §1225(b)). Congress has also directed that the Secretary of DHS may "parole [an alien] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. §1182(d)(5)(A).

The Administration's *en masse* parole policy violates Congress's mandatory detention requirement. Congress has limited the exercise of

7

the parole power to a "case-by-case basis." *Ibid*. As the district court found, however, there is simply no way that DHS officials are meaningfully making individualized determinations when they decide to parole an alien under PWC. A177. Instead, DHS is paroling aliens *en masse* into the interior without first initiating removal proceedings. That is precisely what §1225(b) forbids.

Nor can DHS hide behind claims that it is exercising its "discretion." The President and his executive agencies may not exercise "discretion" to ignore the unambiguous commands of the statute. See *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 642 (1952) (Jackson, J., concurring). Here, Congress unambiguously requires DHS to detain aliens pending removal proceedings. *Jennings*, 138 S. Ct. at 844. The President and DHS may not invoke "discretion" to implement a policy that directly defies Congress's clear mandate and "parole" millions of unvetted aliens into the interior. See *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) ("Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority in a manner that is inconsistent with the

administrative structure that Congress enacted into law." (quotation marks omitted)).

And the Administration's contortion of "discretion" in §1182(d)(5)(A) is especially unreasonable in light of the substantial consequences that befall States as they absorb more than a million unvetted, untraceable illegal aliens. See pp.10-14, *infra*. It cannot possibly be that Congress hid in the parole statute the "discretion" to utterly disregard the detention mandate of §1225(b)(1) and require the States to bear these costs. See *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) ("[O]ur precedent teaches that there are extraordinary cases ... in which the history and the breadth of the authority that [the agency] has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." (quotation marks omitted)).

Because the "parole" policies are contrary to law, the Administration is unlikely to succeed on the merits of its challenge to the district court's injunctive order, and its motion to stay that order should be denied.

## II.    The remaining equitable factors cut decisively against the Administration

The equitable factors here also weigh heavily against a stay. First, the equities cannot favor the Administration because it comes to this Court with unclean hands. As Florida demonstrated at trial over the nearly identical Parole+ATD policy, the Administration's *en masse* parole policies are driving the massive surge of migrants at the southwest border because the migrants correctly "believe they will be released into the country." A059.

The history of PWC also reeks of bad faith, with the Administration having forced Florida into a years-long game of "whack-a-mole" by seeking "to avoid review of its actions by discontinuing its reliance on a policy only to replace it with another policy that has a different name but operates functionally the same." A193 n.11; see pp.3-5, *supra*. The Secretary's stay application does not even try to explain his decision to reimplement the enjoined Parole+ATD policy and slap a new label on it mere hours before the Title 42 order expired. This Court should not reward this behavior with a stay.

Second, the Administration's parole policies have caused immeasurable harms to *Amici* States, "both to [their] sovereignty and

10

[their] public fisc." A178. The States do not enforce the federal immigration laws, see *Arizona*, 567 U.S. at 401, and are therefore at the mercy of federal enforcers. The Administration's abject failure to secure the border and enforce the immigration laws has shifted the huge expense of dealing with the migrant surge from the federal government, where it belongs, directly onto the backs of the States. *Amici* States have suffered enormous costs and disruptions as a result, hampering their ability to serve the needs of their own citizens and taxpayers.

Those costs include thousands of dollars per student who must be educated in *Amici* States' public schools; hundreds of thousands of dollars to provide emergency medical care for uninsured aliens; and costs to provide other state services—such as housing assistance, or costs resulting from a surge in the homeless population. See, *e.g.*, *Texas v. United States*, 40 F.4th 205, 216-17 (5th Cir. 2022); *Louisiana v. Centers for Disease Control & Prevention*, 603 F. Supp. 3d 406, 420 (W.D. La. 2022); A083-87. Multiplied by the massive numbers of aliens the Administration is releasing, these costs are substantial for *Amici* States'

limited budgets. That influx stands to add substantially to the more than 400,000 illegal aliens already residing in Virginia.[2]

Not only *Amici* States are feeling the effects of this crisis. Cities that once proudly declared themselves "sanctuaries" for illegal aliens have complained bitterly about the influx. For example, the mayor of the District of Columbia last year requested National Guard assistance to deal with fewer than 5,000 aliens entering the city.[3] The mayors of New York and Chicago have similarly bemoaned the effects of the crisis on their cities, with the mayor of New York claiming that "the city was being 'destroyed by the migrant crisis.'"[4]

The Administration's failure to secure the border also increases *Amici* States' law enforcement costs and greatly exacerbates the public

---

[2] Federation for American Immigration Reform, *The Fiscal Burden of Illegal Immigration on United States Taxpayers 2023*, 40 (last accessed May 24, 2023), https://tinyurl.com/ynrpjzrm.

[3] 7News Staff, *'Humanitarian Crisis': Bowser Calls for National Guard to Help with Migrants Bused to DC*, ABC News (July 28, 2022), https://tinyurl.com/mspnwjz8.

[4] Jeffery C. Mays, *Mayor Adams Walks a Tightrope in Lashing Out at Migrant Influx*, The New York Times (May 2, 2023), https://tinyurl.com/5ekwm476; see also Evelyn Holmes & Eric Horng, *Mayor Lightfoot issues emergency declaration in response to surge of Chicago migrants*, ABC7 News (May 9, 2023), https://tinyurl.com/bdfmxmn8.

12

safety issues they face. As the district court held, for most of the released aliens, "DHS has no idea whether they have criminal histories or not." A075. Some doubtless do pose public safety threats. In 2020, for example, ICE removed over 185,000 aliens, almost two-thirds of whom had criminal convictions or pending criminal charges at the time of their removal.[5] Thousands were known or suspected gang members.[6]

Indeed, Mexican drug cartels use the open border to import deadly fentanyl made from raw materials from China into the United States.[7] The fentanyl is mixed into a wide range of drugs, including "counterfeit prescription pills" that are "sold to unsuspecting buyers."[8] Fentanyl overdose deaths in the United States have "surged dramatically" since 2020, topping 100,000 deaths last year, and "disproportionately impacting black residents and communities."[9] Again, *Amici* States are

---

[5] U.S. Immigration and Customs Enforcement, *ICE Annual Report Fiscal Year 2020*, 4-5 (Dec. 23, 2020), https://tinyurl.com/2b7k4yxw.

[6] *Ibid.*

[7] U.S. Drug Enforcement Administration, *Fentanyl Deaths Climbing, DEA Washington Continues the Fight* (Feb. 16, 2022), https://tinyurl.com/2vz7rwn6.

[8] *Ibid.*

[9] *Ibid.*

left to bear the enormous costs and irreparable harm of this crisis to their citizens. See A083-87.

Further, aliens seeking entry to the United States are often coerced by human traffickers into modern-day slavery, including "forced sex exploitation" as well as other forced labor.[10] Migrant women "make up the largest portion of trafficking victims."[11] Victims also include children "being abused in child pornography or drug trafficking."[12]

In short, the Administration's failure to enforce federal immigration law and secure the border has imposed severe and irreparable harm on *Amici* States. The district court's order enjoining the Administration's unlawful policy should be left in place as the litigation proceeds.

## CONCLUSION

This Court should deny the motion to stay.

---

[10] See Selene Rodriguez, *How Porous Borders Fuel Human Trafficking in the United States*, Texas Policy Institute (Jan. 11, 2022), https://tinyurl.com/msbv5czr.

[11] *Ibid.*

[12] *Ibid.*

Respectfully submitted,

COMMONWEALTH OF VIRGINIA

By: _____ */s/ Andrew N. Ferguson* _____
         ANDREW N. FERGUSON
         *Solicitor General*

JASON S. MIYARES
  *Attorney General*

KEVIN M. GALLAGHER
  *Deputy Solicitor General*

M. JORDAN MINOT
  *Assistant Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

May 24, 2023

*Counsel for* Amici Curiae

15

## COUNSEL FOR ADDITIONAL AMICI STATES

STEVE MARSHALL
Attorney General
State of Alabama

TREG TAYLOR
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

CHRISTOPHER M. CARR
Attorney General
State of Georgia

RAÚL R. LABRADOR
Attorney General
State of Idaho

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

GENTNER F. DRUMMOND
Attorney General
State of Oklahoma

ALAN WILSON
Attorney General
State of South Carolina

MARTY J. JACKLEY
Attorney General
State of South Dakota

SEAN D. REYES
Attorney General
State of Utah

PATRICK MORRISEY
Attorney General
State of West Virginia

BRIDGET HILL
Attorney General
State of Wyoming

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because it contains 2,577 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Andrew N. Ferguson*
_____
Andrew N. Ferguson

## CERTIFICATE OF SERVICE

I certify that on May 24, 2023, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Andrew N. Ferguson*
Andrew N. Ferguson