

**ASHLEY MOODY**
**ATTORNEY GENERAL**
**STATE OF FLORIDA**

OFFICE OF THE ATTORNEY GENERAL
Office of the Solicitor General

PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone (850) 414-3300
Fax (850) 487-0168
http://www.myfloridalegal.com

June 19, 2024

VIA CM/ECF

Mr. David J. Smith
Clerk of Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

Re:  Response to Rule 28(j) Letter, *Florida v. United States,* Nos. 23-11528, 23-11644

Dear Mr. Smith:

The Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, No. 23-235 (S. Ct. June 13, 2024), has no bearing on Florida's standing in these consolidated cases.

In *Alliance*, doctors sued the FDA over its rescinding certain regulatory requirements governing prescriptions of the abortion drug mifepristone. Slip op. at 1. The doctors argued that in making mifepristone easier to prescribe, the FDA likely made it so that more patients would use the drug, which could put more patients at risk of suffering complications, which potentially could lead to the doctors' having to treat more patients with mifepristone complications, which could increase the doctors' liability exposure and insurance costs. *Id.* at 18. The Court declined to adopt that "novel" "doctrine of 'doctor standing'" because it was "too speculative or otherwise too attenuated" and "lack[ed] record support." *Id.* at 18–19. That is far afield from the cases here, in which the district court found, based on uncontroverted evidence, increased costs to Florida directly resulting from DHS's release of almost 100,000 aliens into Florida after unlawfully granting them parole under the challenged policies. Fla. Br. 20–22. Proving that such a financial injury predictably resulted from a federal policy is sufficient to support standing, *see Department of Commerce v. New York*, 588 U.S. 752, 767–68 (2019)—a principle *Alliance* reaffirmed, *see* slip op. at 12 (citing *Department of Commerce*).

*Alliance* also rejected pro-life medical associations' argument that "incurring costs to oppose FDA's actions" gave them standing. *Id.* at 22. DHS points to the Court's rejection

1

of that diversion-of-resources-standing theory (and Florida's reliance on it to refute a similar theory in another case) as somehow relevant here. A diversion-of-resources-standing argument arises when an organization otherwise unaffected by a law attempts to "manufacture its own standing" "by expending money to gather information and advocate against" the law. *Id.* Florida does not claim an injury from voluntarily spending money to oppose DHS's policies but from DHS's imposition of additional costs on Florida's performance of ordinary state functions. That bears no resemblance to the diversion-of-resources theory rejected in *Alliance*.

Sincerely,

/s/ Henry C. Whitaker
*Counsel for Plaintiff-Appellee*

cc (via CM/ECF):
All appellate counsel of record

## CERTIFICATE OF COMPLIANCE

      I certify that this letter complies with the type-volume limits of Federal Rule of Appellate Procedure 28(j) because the body of the letter contains 345 words.

## CERTIFICATE OF SERVICE

      I certify that on June 19, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send notice of docketing activity to all parties who are registered through CM/ECF.

                                                    */s/ Henry C. Whitaker*
                                                    Solicitor General